UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES MICHAEL HAND, *et al.*,

    *Plaintiffs*,

v.                                    Case No. 4:17-CV-128-MW-CAS

RICK SCOTT, in his official capacity as
Governor of Florida and Member of the
State of Florida's Executive Clemency
Board, *et al.*,

    *Defendants*.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON REMEDIES**

    In contrast to Defendants' Remedies Brief, which thoroughly outlined binding precedent of the United States Supreme Court and Eleventh Circuit Court of Appeals limiting this Court's authority to grant relief beyond the issuance of a declaratory judgment, Plaintiffs' Brief on Remedies disregards that precedent in asking this Court to grant broad injunctive relief: a judicially-imposed grant of voting rights to those who, under Florida's laws and Constitution, have forfeited those rights as a result of their commission and conviction of felony offenses.

    The Court acknowledged these limitations upon its remedial authority in its Order, Op. at 9 (recognizing authority of the states to permanently disenfranchise convicted felons); *id.* at 39 ("This Court cannot [strike Florida's disenfranchisement statutes] because states have an 'affirmative sanction' in the Constitution to

disenfranchise felons"); *id.* at 40 (noting the power to restore civil rights exclusively resides with the Clemency Board under the Florida Constitution), and it should decline Plaintiffs' invitation to disregard controlling legal authority and the foundational principles of separation of powers and federalism.

Plaintiffs make three significant concessions, each of which has implications for the scope of appropriate relief in this case. *See* ECF No. 147 ("Pls. Remedies Br."). *First*, Plaintiffs acknowledge that this Court "will not . . . enjoin felon *disenfranchisement* . . . in light of *Richardson v. Ramirez*, 418 U.S. 24, 53-56 (1974)." Pls. Remedies Br. 1-2 (emphasis in original). Thus, both sides agree that this Court should not interfere with Florida law's automatic forfeiture of civil rights upon felony convictions. *Second*, Plaintiffs admit that "there may appear [to] be no limit on the number of possible non-arbitrary, objective, 'neutral, transparent, and uniform' restoration schemes that might be crafted," and they further admit that at least some of an unlimited universe of possible vote-restoration systems—and not just the one they prefer—would "truly remedy the totality of the violations the Court has found in this case." Pls. Remedies Br. 2. Plaintiffs' concessions foreclose any argument that this Court may order Defendants to implement the particular vote-restoration system Plaintiffs suggest.

*Finally*, Plaintiffs requested that the Court allow them to withdraw their class-certification motion, *id.* at 2, and this Court has accordingly denied that motion, ECF

No. 150. For that reason, Plaintiffs are no longer entitled to seek class-wide relief, and the Court must therefore limit any remedial order to the named Plaintiffs only.[1]

### I. ANY RELIEF MUST BE LIMITED TO THE BOARD'S VOTE-RESTORATION PROCESS.

Plaintiffs agree that the Court must limit the relief it ultimately grants to the Board's vote-restoration process, leaving undisturbed the State's laws regarding forfeiture of voting rights upon a felony conviction. Pls. Remedies Br. 1–2. In particular, Plaintiffs acknowledge that "[t]he Court has made clear that it will not invoke First Amendment precedents on arbitrary restraint-and-licensing schemes to enjoin felon disenfranchisement in Florida . . . in light of *Richardson v. Ramirez*, 418 U.S. 24, 53–56 (1976)." *Id.* As a result, Plaintiffs have abandoned their requests for remedies affecting the constitutional forfeiture of voting rights by convicted felons. *See id.* Instead, Plaintiffs seek only a remedy that would affect Florida's restoration process. *Id.* at 2-13.

Plaintiffs' concession is appropriate. This Court has rejected Plaintiffs' challenge to Florida's constitutional and statutory provisions prohibiting any person convicted of a felony from voting (or holding office) unless and until his or her civil rights have been restored. Defs. Remedies Br. 4–5. In addition, a traditional severability analysis

---

[1] This Court has permitted the filing of an amicus curiae brief by Mark R. Schlakman, and it has made that brief due "on or before the close of business on Friday, February 23, 2018." D.E. 156 at 2. Because this Court has made Defendants' response brief due two days before that date, Defendants reserve their right to respond in any future proceedings to arguments advanced in the forthcoming amicus brief, especially to the extent this Court may rely on such arguments in its forthcoming final order.

demonstrates that these laws and constitutional provisions must be left intact, *see id.* at 5–7, and Plaintiffs do not argue otherwise. Any remedy should be tailored accordingly.

## II. AS PLAINTIFFS CONCEDE, FEDERAL LAW DOES NOT MANDATE THE ADOPTION OF A VOTE-RESTORATION SYSTEM.

Plaintiffs' brief on remedies underscores the core premise advanced in Defendants' remedies brief—the Board has a range of available options that would address the issues raised in the Court's Order. For that reason, Plaintiffs are not entitled to an order directing the Board to implement any particular system. *See* Defs. Remedies Br. 10–19.

Specifically, this Court's Order identified concerns with the "unfettered discretion that the Clemency Board possesses over a former felon's re-enfranchisement" and the "lack of clear time limits in processing and deciding clemency applications." Op. 18. In their brief, Plaintiffs admit that the Board has a variety of options for constraining its discretion in the future. The State, Plaintiffs acknowledge, can adopt any "number of possible non-arbitrary, objective, 'neutral, transparent, and uniform' restoration schemes." Pls. Remedies Br. 2. And Plaintiffs admit that at least some of those schemes would "truly remedy the totality of the violations the Court has found in this case." *Id.*

Because "[t]he sole function of an action for injunction is to forestall future violations," eliminating the aspects of Florida's vote-restoration system that the Court identified would also eliminate any justification for an injunction. *United States v. Oregon*

4

*State Med. Soc.*, 343 U.S. 326, 333 (1952); *see Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[I]njunctions regulate future conduct only; they do not provide relief for past injuries already incurred and over with."). And because all parties agree that the Board has a range of available options that would eliminate the matters identified in the Court's Order, forcing the Board to adopt one approach out of many valid approaches would be unjustified and would raise a host of federalism concerns. *See* Defs. Remedies Br. 10–19.

Indeed, were this Court to force the Board to adopt its (or Plaintiffs') preferred approach on the basis of purported state-law requirements, it would necessarily order such relief pursuant to state (rather than federal) law, which is "the determinative question" under *Pennhurst. See Brown v. Ga. Dep't of Rev.*, 881 F.2d 1018, 1023 (11th Cir. 1989). Whether Florida law requires a vote-restoration system, and if so, what type of system it may require, is not even relevant—much less "preliminary," *see Fleet Bank, Nat'l Ass'n v. Burke*, 160 F.3d 883, 891 n.6 (2d Cir. 1998)—to the federal claims Plaintiffs have advanced in this suit.

But even on their own terms, Plaintiffs' state-law arguments are unavailing. The Florida Constitution does not command the Board to restore voting rights. Rather, it expressly vests the Board with *discretion* to do so. *See* Fla. Const. art. IV, § 8(a) (with exceptions not relevant here, "the governor *may* . . . with the approval of two members of the cabinet . . . restore civil rights . . . ." (emphasis added)). A declaration leaving to the Board's discretion which of the available options to select, when to select it, and

5

after what review process, would best honor the discretion that Florida's Constitution entrusts to the Board. By contrast, an order requiring the Board to adopt a particular kind of restoration system would be antithetical to that discretion. *See* Defs. Remedies Br. 17.

In Plaintiffs' view, however, any option other than automatic restoration after the five- or seven-year waiting periods would "invite further litigation," Pls. Remedies Br. 6, be "constitutionally suspect," *id.*, or "could not constitutionally be made," *id.* at 9. Yet Plaintiffs ignore that the Court expressly declined to "comment on the permissibility of" a "system of vote-restoration that is neutral, transparent, or uniform." Op. 18 n.10. If a number of options available to the Board would address the Court's Order, Plaintiffs have no right to insist that the Board make one valid choice over another. And this is entirely consistent with Defendants' argument in their motion for summary judgment that "[i]f, as Plaintiffs assert, the problem with Florida's voting-rights restoration procedure is that it 'lacks any codified, objective test or set of criteria,' D.E. 43 at 25, the logical remedy would be for the State to put some such test or criteria in place." D.E. 103 at 23-24. A decision not to restore voting rights—either permanently or pending the adoption of a new vote-restoration system—would supply an objective test. *See id.* at 24 ("Florida could 'permanently disenfranchise convicted felons,' *Johnson*, 405 F.3d at 1217, without providing any process—discretionary or otherwise—for restoration."). And in any event, Plaintiffs have conceded that there are multiple ways in which the Board could devise a new restoration system. That being the

6

case, Plaintiffs have no basis to ask this Court to require the Board to make any particular choice.

In other words, the Court's summary judgment order makes clear the Court's view that the Board's vote-restoration system must be "neutral, transparent, and uniform" to survive constitutional scrutiny. The Court did not hold that only one kind of "neutral, transparent, and uniform" system is constitutionally permissible. Thus, this Court's order provides no support for Plaintiffs' proposal that "this Court order the restoration of the right to vote to all persons with felony convictions immediately following the completion of any waiting period of a specified duration of time set forth in Florida state law or the Rules of Executive Clemency," Pls. Remedies Br. 2.

Plaintiffs' suggestion that injunctive relief would "obviate the need for further constitutional litigation" over a vote-restoration system adopted by the Board that is concededly "non-arbitrary, objective, 'neutral, transparent, and uniform'" is misplaced. *E.g.*, Pls. Remedies Br. 6 ("a requirement to be misdemeanor-free would invite further litigation"); *id.* at 11 ("A different restoration scheme . . . would invite further litigation"). There is no basis to presume that a future clemency system would be applied in an impermissible manner, and Plaintiffs may not strip the State of constitutionally available options by threatening to bring a hypothetical future suit.

7

### III. PLAINTIFFS HAVE FAILED TO SHOW THAT INJUNCTIVE RELIEF IS NECESSARY OR APPROPRIATE.

Plaintiffs have failed to satisfy the requirements for demonstrating that the Court should issue an injunction. As a threshold matter, where "a less drastic remedy . . . [i]s sufficient to redress [an] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). As set out in the Defendants' brief on remedies, a declaratory judgment alone would foreclose the continued application of the vote-restoration system that the Court found objectionable. In addition, Plaintiffs may not ask this Court to presume that the Board will replace the current clemency system with another system that raises the same concerns. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (denying injunctive relief where "it would be no more than conjecture to suggest that" in future cases "the police will act unconstitutionally"). Accordingly, Plaintiffs cannot establish that an injunction is necessary to prevent future violations. *See Wooley v. Maynard*, 430 U.S. 705, 711–12 (1977) ("[A]lthough '(o)rdinarily . . . the practical effect of (injunctive and declaratory) relief will be virtually identical,'" in cases against States, "a 'district court can generally protect th[e] interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary'") (quoting *Samuels v. Mackell*, 401 U.S. 66, 73 (1971); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

In any event, "[t]o obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010) (citations omitted). The Board previously established why Plaintiffs have not (and cannot) satisfy these four factors. *See* Defs. Remedies Br. 23-24. Specifically, (a) a declaratory judgment would fully remedy any past violations, (b) Plaintiffs would not suffer any irreparable future harm absent an injunction, and (c) an injunction would disserve the public interest. *Id.*

Plaintiffs make no attempt in their initial remedies brief to carry their burden of satisfying the requirements for securing permanent injunctive relief; in fact, they don't even mention them. As a result, they have failed to carry their burden to establish that injunctive relief is appropriate. *See Monsanto Co.*, 561 U.S. at 156 ("[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."); *see also, e.g.*, *Smith v. Dep't of Health & Hosps. Louisiana*, No. 12-cv-3057, 2014 WL 4635540, at *3 (E.D. La. Sept. 15, 2014) (holding that plaintiff failed to carry burden of proof where he did not mention injunctive relief factors).

Plaintiffs are wrong to suggest that injunctive relief is necessary to remedy hypothetical future violations. *See, e.g.*, Pls. Remedies Br. 12 (arguing that a restoration scheme involving neutral factors would require "years just to clear the existing backlog,

9

and Count Three's First Amendment violation will not be redressed"); *id.* at 4-13 (contending that felons should not be held "to a higher eligibility standard than the electorate at large"). Plaintiffs lack standing to seek a remedy for any third party—particularly in light of the Court's denial of Plaintiffs' motion for class certification. "[T]he fact that others may be exposed to [the Board's] process in the future is not sufficient for [Plaintiffs] to obtain prospective relief that will not benefit [them] in conjunction with [their] individual claim[s]." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1285 (11th Cir. 2001). And that is particularly so inasmuch as Plaintiffs cannot ask this Court to presume that the Board's future approach to clemency will be invalid. Because Plaintiffs have made no showing that a declaratory judgment alone will be insufficient, injunctive relief would be inappropriate.

## IV. EVEN IF AN INJUNCTION WERE APPROPRIATE, PLAINTIFFS ARE NOT ENTITLED TO THE AUTOMATIC VOTE-RESTORATION SCHEME THEY SEEK.

Even if the Court decides to issue an injunction, Plaintiffs are not entitled to an injunction commanding the State to automatically restore the voting rights of all felons upon expiration of the waiting periods. Plaintiffs request an order restoring the voting rights of *all* "persons with felony convictions following the current pre-application . . . waiting periods." Pls. Remedies Br. 19. The Court should reject this proposal.

*First*, Plaintiffs are wrong that the Board may constitutionally consider *only* "felony convictions and U.S. citizenship status" when making voting-rights restoration decisions. Pls. Remedies Br. 5. As discussed above, the Court struck only the unfettered

discretion that the Board purportedly wields when it applies restoration criteria and the lack of clear time limits.

Plaintiffs' entire argument rests on a false equivalency. In their view, the considerations that determine whether non-felons (who never forfeited the right to vote by commission of a felony) are *eligible* to vote are the same as those that should determine whether convicted felons (who forfeited voting rights through their own criminal conduct) can *regain* the right to vote. *E.g.*, *id.* at 4, 6, 7, 8, 9, 11, 16. In other words, Plaintiffs contend, felons cannot be held "to a higher eligibility standard than the electorate at large." *Id.* at 4. Binding precedent *directly* refutes that claim. *See Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) ("Section 2's express approval of the disenfranchisement of felons [ ] grants to the states a realm of discretion in the disenfranchisement and reenfranchisement of felons which [they] do not possess with respect to limiting the franchise of other citizens."); *see* Op. 35 (citing *Shepherd* for same). It is also foreclosed by logic; because States may permanently bar a felon from voting, they can plainly condition the privilege of regaining that right on neutral, objectively applied criteria. *Ramirez*, 418 U.S. at 54-55; Op. 9, 39.

At bottom, the theme of Plaintiffs' brief is that the State must affirmatively justify "perpetuation of disenfranchisement." Pls. Remedies Br. 6. Plaintiffs contend that different factors (such as misdemeanor convictions and criminal arrests) cannot be justified because "disenfranchisement is not permitted" for those factors "under Florida state law." *Id.* at 6. Put differently, Plaintiffs maintain that, because the State does not

11

"disenfranchise a person" for a particular reason, the State may not even *consider* that reason when deciding whether to exercise its clemency power. *Id.* at 6.

That argument is meritless, and it finds no support in this Court's Order. On summary judgment, this Court assessed whether the Board's discretion in restoring voting rights was sufficiently constrained, *not* whether the State has a rational basis for refusing to restore voting rights for particular reasons. That focus tracked the claims presented for this Court's consideration. In their Complaint, Plaintiffs did not allege that consideration, in a uniform system, of the objective or neutral standards discussed in their brief would violate their constitutional rights. And, at this stage of the proceedings, the question is not whether consideration of any particular criterion is constitutional; it is whether a uniform scheme with clear time limits—whatever the objective or neutral standards considered—is constitutional, and the answer is plainly yes. Because the Board has many different options to adapt its vote-restoration process to respond to the concerns expressed by this Court, Plaintiffs' automatic restoration scheme is far from the only constitutional option. Accordingly, this Court should decline to impose Plaintiffs' proposed remedy for the many reasons discussed in Defendants' Remedies Brief.

Indeed, the only purported defects that Plaintiffs identify in a system with neutral or objective criteria are those that they themselves invite. For example, Plaintiffs contend that a uniform system that considers objective or neutral criteria could "still result in an arbitrary process because some of this information can only be supplied by

the applicant and not all applicants will volunteer this information." Pls. Remedies Br. 10. But requiring that all applicants meet the same application criteria is, by definition, uniform, and applicants' own, voluntary refusals to meet those criteria cannot change that fact.

Similarly, Plaintiffs argue that this Court should force the State to implement Plaintiffs' preferred policy solution because alternative solutions—even if they are neutral, objective, and uniform—might yield "further litigation." They question whether "[a] different restoration scheme based on objective [criteria] would invite further litigation" regarding whether consideration of those criteria has "a rational relationship to the achieving of a legitimate state interest." Pls. Remedies Br. 11. But "[a] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them'"; indeed, "[i]ts judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Thus, this Court should reject the fundamental premise underlying Plaintiffs' proposal.

*Second*, Plaintiffs' proposed injunction is overbroad. "[T]he scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "[T]he case law has long established that the scope of an injunction should not exceed the identified violation." *Bryant*, 614 F.3d at 1323. "That is, the

13

remedy must be tailored to the violation, rather than the violation's being a pretext for the remedy." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 111 F.3d 528, 534 (7th Cir. 1997). For example, the Eleventh Circuit has ordered a district court to modify an injunction on remand "so that the injunction remedies only the harm created" by the constitutional violation that it upheld. *Barrett*, 872 F.3d at 1230; *see also Oregon State Med. Soc.*, 343 U.S. at 333 (when designing injunctions, courts should "keep in sight the target at which relief is aimed").

The relief that Plaintiffs request in their brief is not narrowly tailored to remedy the issues addressed in the Court's Order. This Court held that the Board's "limitless power over Plaintiffs' vote-restoration violates *their* First Amendment rights." Op. 20 (emphasis added). Although Plaintiffs once acknowledged that any injunctive relief should "be limited to the parties before this Court," Pls. Mot. for Summ. J., ECF No. 102, at 45, and although this Court denied Plaintiffs' motion for class certification after they sought to withdraw it, *see* ECF No. 150, Plaintiffs now request an order restoring the voting rights of all "persons with felony convictions following the current pre-application [or pre-restoration] waiting periods." Pls. Remedies Br. 19. Plaintiffs' proposed injunction is overbroad. *See Bryant*, 614 F.3d at 1324 (upholding injunction as "closely tethered to the identified harm" where district court held that defendants "violated the constitutional rights of only two inmate" plaintiffs and issued injunction governing defendants' treatment of only those two inmates "out of thousands" in the facility); *see also Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) ("[w]here relief

14

can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown").

Granting Plaintiffs' request would be particularly unwarranted in light of the Court's denial of their motion for class certification. ECF No. 150. "Without a properly certified class, a court cannot grant relief on a class-wide basis." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 (9th Cir. 1983). "[T]he injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." *Id.* at 727 (citing *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984)); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 170 (3d Cir. 2011) ("[I]n the absence of a certified class action, [a plaintiff] [i]s only entitled to relief for itself."). Although courts may "exten[d] benefit or protection to persons other than prevailing parties in the lawsuit," that is only where "breadth is necessary to give prevailing parties the relief to which they are entitled." *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) (emphasis omitted). By contrast, "[w]here relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Id.*; *see also Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 490 (7th Cir. 2004) ("[D]istrict courts lack the authority to enjoin the enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." (internal quotation marks omitted)). Here, a declaratory judgment would provide an adequate remedy for the specific concerns identified by the Court.

Although Defendants believe no additional relief is necessary or appropriate, because class certification was denied here, the Court is empowered to grant relief only to Plaintiffs. *See Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) (holding that injunction was "overly broad in that the class wide focus is completely unnecessary to provide the named plaintiffs the relief to which they are entitled as prevailing parties"); *see also Everhart v. Bowen*, 853 F.2d 1532, 1539 (10th Cir. 1988), *rev'd on other grounds sub nom. Sullivan v. Everhart*, 494 U.S. 83 (1990) ("Absent a class certification, the district court should not have treated the suit as a class action by granting statewide injunctive relief, and accordingly should have tailored its injunction to affect only those persons over [whom] it has power." (internal quotation marks omitted)) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 310–11 n.1 (1976); *Zepeda*, 753 F.2d at 727).

## CONCLUSION

The relief requested in Plaintiffs' Remedies Brief should be denied. Because declaratory relief would provide a full remedy, injunctive relief is neither necessary nor appropriate and should likewise be denied.

    Respectfully submitted,

    PAMELA JO BONDI
    ATTORNEY GENERAL

    */s/ Amit Agarwal*
    Amit Agarwal (FBN 125637)
    Solicitor General
    Edward M. Wenger (FBN 85568)
    Chief Deputy Solicitor General
    Jordan E. Pratt (FBN 100958)

Deputy Solicitor General
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3681
(850) 410-2672 (fax)
amit.agarwal@myfloridalegal.com
edward.wenger@myfloridalegal.com
jordan.pratt@myfloridalegal.com

*Counsel for All Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of February, 2018, a copy of the foregoing was served on all counsel of record through the Court's CM/ECF Notice of Electronic Filing System.

*/s/ Amit Agarwal*
Solicitor General

...

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, I certify that the foregoing Brief contains 3,989 words.

*/s/ Amit Agarwal*
Solicitor General